**KEENE CORPORATION, a Delaware Corporation, Plaintiff,**

**v.**

**John HANNAH, Jr., Secretary of State of the State of Texas, Defendant.**

**Civ. No. A 92 CA 11.**

United States District Court,
W.D. Texas,
Austin Division.

July 13, 1992.

J. Dennis Chambers, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., Martin H. Redish, Michael A. Berman, Kristopher S. Heston, Holleb & Coff, Chicago, Ill., for plaintiff.

David Mattax, Asst. Atty. Gen., Finance Div., Austin, Tex., for defendant.

## MEMORANDUM OPINION and ORDER

SPARKS, District Judge.

BE IT REMEMBERED on July 9, 1992, this Court held a motions hearing, at which the parties appeared by and through their counsel of record. Having considered Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss, responses thereto, and accompanying briefs, and listened to counsel argue the motions, the Court finds that the Defendant's Motion to Dismiss should be granted.

### Background

Plaintiff Keene Corporation ("Keene") is a Delaware corporation involved in a great deal of asbestos litigation in the State of Texas. In 1983, while Keene was a New York corporation, it expressly requested authority to transact business in Texas pursuant to the Texas Business Corporation Act. On April 7, 1983, Keene became registered to do business in the State of Texas.

On March 26, 1990, Keene, no longer wishing to conduct business in Texas, filed an application for certificate of withdrawal with the Secretary of State in which it certified that Keene was *not* involved in, or threatened with, litigation in Texas (as required by Article 8.14 of the Texas Business Corporation Act). This representation was not correct as Keene was certainly engaged in active litigation in the State of Texas. On March 26, 1990, the Secretary of State, based on Keene's application for certificate of withdrawal, issued to Keene a certificate of withdrawal. Subsequently, Keene recognized the misrepresentation, which it alleges was a good faith mistake, and filed articles of correction to correct its earlier application for certificate of withdrawal. The Secretary of State refused to accept Keene's articles of correction on the ground that it had already issued Keene's certificate of withdrawal and had no statutory authority to accept amendments to, or correction of, the earlier application. According to the Secretary of State, only a court order (presumably pursuant to Article 9.04 of the Texas Business Corporation Act) would allow him to set aside Keene's application for certificate of withdrawal.

On January 8, 1992, Keene filed this lawsuit seeking injunctive and declaratory relief based on the claim that Article 8.14 of the Texas Business Corporation Act violates Keene's constitutional right to only be sued in a forum in which it either has minimal contacts or consents to jurisdiction. Keene asserts that because Article 8.14(A)(7) is mandatory and unambiguous, its certificate of withdrawal will be construed to be ineffective and it will be considered registered to do business in Texas. If Keene is held to be registered to do business in Texas, it may be deemed to have consented to jurisdiction, while Keene alleges it has not. Thus, Keene fears there will be no constitutional basis for asserting jurisdiction in a Texas court in those cases where minimum contacts do not otherwise exist.

Specifically, Keene wants this Court to do three things:

(1) enjoin the Secretary from refusing to accept Keene's corrected application for withdrawal of registration;

(2) declare Article 8.14 of the Texas Business Corporation Act, which requires a corporation to certify it is not involved in litigation in Texas before it may withdraw its registration to do business, unconstitutional as applied to Keene; and

(3) enjoin the Secretary of State from refusing to issue to Keene a certificate of withdrawal on the basis of its corrected application.

Keene represents it is currently being sued in over 1000 cases in Texas, many of which Keene alleges are cases in which the plaintiff is not a Texas resident and there is no Texas connection with the product involved in the suit or with Keene. Keene represents it has filed special appearances contesting jurisdiction in many of those cases, but no state court has ruled on the issue at this time. In addition to the many suits filed against Keene for injury due to asbestos exposure, two plaintiffs who had already brought suit against Keene in Dallas County, Texas, brought a declaratory judgment suit against Keene and the Secretary of State in Travis County, Texas, asking that the court declare Keene's certificate of withdrawal to do business in Texas void and ineffective and that the Court declare that Keene has been, and will continue to be, licensed to do business in Texas since its attempted withdrawal.

The Secretary of State ("Secretary") filed a Motion to Dismiss on February 6, 1992, and Keene filed a Motion for Summary Judgment on April 6, 1992. Because the Court finds the Secretary's Motion to Dismiss meritorious and will grant it, the Court will not address Keene's Motion for Summary Judgment.

### Secretary of State's Motion to Dismiss

In his Motion to Dismiss, the Secretary claims there is no diversity jurisdiction because he is being sued in his official capacity and, therefore, the State of Texas is the real party in interest. He then contends there is also no federal question jurisdiction because there is no case or actual controversy as required by 28 U.S.C. 2201 (declaratory judgment statute). Finally, the Secretary contends that even if there is an actual controversy, the suit should be dismissed based on abstention. Also, in a later pleading the Secretary argues that the Eleventh Amendment prevents this Court from being able to order the Secretary of State to accept, under Texas law, Keene's articles of correction in the first place.

The Secretary claims there is no actual case or controversy because Article 8.14 has not been construed against Keene to force it to remain registered in Texas and, in fact, Keene is not currently registered to do business in Texas. Furthermore, although Keene generally asserts that it is being sued in instances where no general or specific jurisdiction would exist but for its "registration" to do business in Texas, Keene has named no suit in which a Texas court has in fact asserted jurisdiction over it on the basis that Keene is registered to do business in Texas or on the basis that its withdrawal of certification to do business in Texas is void or ineffective due to misrepresentation by Keene.

In response, Keene maintains there exists a real and live controversy with the Secretary over the status of its application for a certificate of withdrawal and the constitutionality of the status once state law is followed. According to Keene, the resolution of this suit will determine whether it must be forced to remain registered to do business in the State of Texas, with all of the legal consequences that flow from registration under state law.

### A. Keene's State Law Claim

■ The Court does not doubt that there exists a controversy between Keene and the Secretary of State regarding the Secretary of State's refusal to accept Keene's articles of correction. This controversy, however, belongs in a Texas state court. The Eleventh Amendment clearly bars a federal court from ordering a state official to act under state law.[1] *Pennhurst State*

---

1. The Supreme Court has stated very clearly "that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment ... [and] this applies as well to state-law claims brought into federal court under pendent jurisdiction." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). The fact that a plaintiff may have "to forgo their right to a federal forum and bring all of their claims in state court" makes no difference. *Id.*

*School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). Not only can this Court not order the Secretary of State to accept Keene's articles of correction under the Eleventh Amendment, but the Texas Business Corporation Act specifically addresses the proper recourse for a party, like Keene, who believes the Secretary of State failed to approve a document required by the Act.

Article 9.04 states that in such a case the "person or corporation may appeal to any district court of Travis County ... whereupon the matter shall be tried de novo by the court, and the court shall either sustain the action of the Secretary of State or direct him to take such action as the court may deem proper." Tex.Bus.Corp. Act Ann. art. 9.01. Prior to the passage of that article in 1955, the proper remedy "of a disappointed applicant against the Secretary of State lay in original mandamus proceedings in the [Texas] Supreme Court." *Id.* Comment of Bar Committee—1955. No one has ever contemplated federal review (at the district court level) of the Secretary of the State of Texas's decisions. *See infra* n. 1; *see also New Orleans Pub. Serv. v. Council of New Orleans,* 491 U.S. 350, 360, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (discussing *Alabama Pub. Serv. Comm'n v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951)) ("right of statutory appeal 'concentrated in one circuit court' ... was, [the Court] found, 'an integral part of the regulatory process under the Alabama Code.'" Thus, abstention was appropriate.).

Nonetheless, Keene chose not to maintain an action against the Secretary of State in Travis County, although it did initially file just such an action, taking a non-suit shortly before filing this suit. Apparently Keene was concerned that it would be bound by res judicata to raise its constitutional claims in state court as well and thus lose its right to seek a federal forum for its constitutional claims.[2] However, in a Supreme Court case Keene cites as requiring

it to raise its constitutional claims in the state court if it brings its state claim there, the Court in a footnote stated

> ▪n the event a § 1983 plaintiff's federal and state-law claims are sufficiently intertwined that the federal court abstains from passing on the federal claims without first allowing the state court to address the state-law issues, the plaintiff *can preserve his right to a federal forum* for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court.

*Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 85 n. 7, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984) (emphasis added). Presumably in a case where the intertwined state claim could not be heard by the federal court because of the 11th Amendment, the plaintiff could also choose to inform the state court of its intention to file its federal claims in a federal court after its state law issues had been determined and preserve its right to litigate the federal claims in federal court.

**B.** *Keene's Federal Constitutional Claims*

1. No Case or Controversy

▪ Keene's remaining two constitutional challenges do not present a concrete claim or controversy upon which this Court can rule. Until the Secretary of State is ordered by a state court to accept Keene's articles of correction or a state court otherwise holds that Keene is currently registered to do business in Texas, this Court cannot possibly declare Article 8.14 unconstitutional or order the Secretary of State to accept and act on Keene's new application for certificate of withdrawal. To do so would require this Court to make a great many assumptions about how Texas state courts will rule.

As it stands, Keene is not registered to do business in Texas under Texas law. Be-

---

**2.** Of course, Keene has an absolute right to have its alleged constitutional rights heard in an action against the Secretary of State in a Travis County, Texas state court or in any other Texas state court action in which Keene believes personal jurisdiction over it is unconstitutional.

cause implied consent to be sued in Texas flows from the foreign corporation's acceptance of the privileges of being authorized to do business in Texas, until Keene is authorized to do business in Texas again, a court could not subject Keene to jurisdiction based on its implied consent. *See Acacia Pipeline v. Champlin Exploration,* 769 S.W.2d 719, 720 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Goldman v. Pre-Fab Transit Co.,* 520 S.W.2d 597, 598 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ) ("As Pre–Fab was authorized to do business within the State, as a matter of law, they are subject to the jurisdiction or 'potential' jurisdiction of its courts...."); *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1271 n. 21 (5th Cir.1981) (consent to jurisdiction is implicit in Texas Business Corporation Act, Article 8.10).

In order for a court in Texas to find that Keene was subject to jurisdiction based on its being registered to do business in Texas, that court would first have to find Keene's certificate of withdrawal void and/or ineffective based on the misrepresentation in Keene's application to the Secretary of State. At that point, because the statute does not expressly state a foreign corporation consents to jurisdiction so long as it is registered to do business in Texas, the Court would have to find that the theory of implied consent applied to Keene despite Keene's very obvious unwillingness to be subject to jurisdiction in Texas in cases where it alleges minimum contacts do not exist and despite Keene's lack of authority to do business in Texas since the Secretary issued its certificate of withdrawal on March 26, 1990.

The Court is not at all certain that Texas courts will subject Keene to jurisdiction as described above. Texas state courts may very well not subject Keene to jurisdiction under Article 8.14 making a constitutional ruling by this Court unnecessary. Even if the Court was certain Texas courts would find Keene's withdrawal ineffective and subject Keene to jurisdiction on that basis alone, no Texas court would be bound by this Court's prediction, which, as the Supreme Court has stated, would "essentially render[ ] the federal-court decision advisory and the litigation underlying it meaningless." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987); *Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979) (discussing *Pullman* abstention).

■ Article 8.14 is not unconstitutional on its face and this Court will not rule on Article 8.14's constitutionality as applied to Keene based only on guesses of how Texas courts will construe Keene's certificate of withdrawal and how or if Texas courts will apply the theory of implied consent to Keene. Thus, this Court cannot grant Keene's requested relief of declaring Article 8.14 unconstitutional as applied to Keene or ordering the Secretary of State to issue Keene a certificate of withdrawal based on its corrected application.

### 2. Abstention

■ Furthermore, there is a pending state court proceeding in Travis County, Texas, in which both Keene and the Secretary of State are parties and in which the plaintiff seeks to have Keene's certificate of withdrawal declared void and ineffective. In that suit, Keene has raised as an affirmative defense the fact that, according to Keene, application of Article 8.14(A)(7) would violate due process by subjecting Keene to jurisdiction in Texas despite the absence of minimum contacts or consent to jurisdiction. There are also many Texas state court cases in which Keene alleges it has filed special appearances challenging jurisdiction on the same grounds.

Texas courts certainly have a significant interest in determining who may be tried in their courts. Nor has anyone suggested that the Texas state courts presiding over cases in which Keene has been sued will be unable to, or refuse to, entertain Keene's constitutional defenses to jurisdiction. In fact, unlike some constitutional claims, state courts routinely consider questions of personal jurisdiction over defendants, and this Court is quite confident in their ability to do so. Thus, this Court will abstain and let the courts of Texas decide if jurisdiction over Keene exists based on the merits of

each individual case. *See Middlesex County Ethics Comm. v. Garden, Etc.,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *see also Pennzoil,* 481 U.S. at 14, 107 S.Ct. at 1527; *Moore v. Sims,* 442 U.S. 415, 423–30, 99 S.Ct. 2371, 2377–81, 60 L.Ed.2d 994 (1979); *Younger v. Harris,* 401 U.S. 37, 45–46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

### *Conclusion*

Because this Court cannot order the Secretary of the State of Texas to accept Keene Corporation's articles of correction under Texas law and because Texas state courts are fully capable of determining if jurisdiction over Keene is appropriate in each individual case pending against Keene in Texas and may construe Article 8.14 in a manner obviating the need for this Court to rule on its constitutionality, the Court enters the following orders:

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED without prejudice to the parties' substantive rights.

IT IS FURTHER ORDERED that any pending motions remaining in this suit are DENIED AS MOOT.