**'21' INTERNATIONAL HOLDINGS, INC., and '21' International, Inc., Appellants,**

**v.**

**WESTINGHOUSE ELECTRIC CORPORATION, Knoll International, Inc., and Price Waterhouse, Appellees.**

**No. 04–92–00543–CV.**

Court of Appeals of Texas, San Antonio.

May 5, 1993.

Rehearing Denied June 22, 1993.

Stephen D. Susman, Barry C. Barnett, Thomas A. Adams, IV, Susman Godfrey, L.L.P., Dallas, Julio A. Garcia, Laredo, Richard G. Morales, Jr., Mark D. Willett, Person, Whitworth, Ramos, Borchers & Morales, Laredo, L. Wayne Scott, St. Mary's School of Law, San Antonio, Jorge A. Ramirez, Eric J. Mayer, Susman Godfrey, L.L.P., Houston, for appellants.

James K. Jones, Jr., Alicia C. Finley, Mann & Jones, Laredo, Emily Nicklin, Frank Cicero, Kirkland & Ellis, Chicago, IL, Stephen A. Radin, Dennis J. Block, Weil, Gotshal & Manges, New York City, Charles C. Murray, Morris Atlas, Kristen G. Clark, Atlas & Hall, L.L.P., McAllen, Carlos David Castillon, Freeman & Castillon, Laredo, for appellees.

Before PEEPLES, BIERY and GARCIA, JJ.

## OPINION

BIERY, Justice.

'21' International Holdings, Inc., and '21' International, Inc. ('21' International) filed suit against Westinghouse Electric Corporation (Westinghouse), Knoll International, Inc. (Knoll) and Price Waterhouse in Webb County, Texas. The defendants included in their answers motions to dismiss under the doctrine of forum non conveniens and motions for transfer of venue to Dallas County. The trial court denied the motions to transfer venue, but granted the motions to dismiss under the doctrine of forum non conveniens. '21' International appeals the dismissal order and, by way of cross-point, Westinghouse, Knoll and Price Waterhouse appeal the denial of their motions to transfer venue. Appellees also argue alternatively that this appeal should be dismissed or stayed pending the outcome of identical litigation in New York filed after the Texas suit. We reverse and remand.

This action arose out of an Asset Purchase Agreement under which Westinghouse and Knoll agreed to sell '21' International $115 million of Westinghouse common stock in return for substantially all of the assets of a furniture business. As the agreement required, Westinghouse filed with the Securities and Exchange Commission a "registration statement" covering the stock it had agreed to sell. The registration named Price Waterhouse, an accounting firm, as experts in auditing and accounting and included Price Waterhouse's certification of certain Westinghouse financial statements. '21' International claims the registration statement also contained material misrepresentations, in violation of federal and state law, which caused '21' International to sustain a loss of approximately $45 million.

■ The narrow issue in this appeal is whether the doctrine of forum non conveniens applies.[1] Appellants contend the Texas Legislature abolished the doctrine of forum non conveniens in cases involving foreign corporations which have permits to conduct business in Texas pursuant to the predecessor statutory provisions to articles 8.02 and 2.02(A) of the Texas Business Corporation Act.

To support their contention, appellants rely upon *H. Rouw Co. v. Railway Exp. Agency*, 154 S.W.2d 143 (Tex.Civ.App.—El Paso 1941, writ ref'd). In *Rouw*, an Arkansas corporation having a permit to do business in Texas brought an action against Railway Express Agency, a Delaware corporation also having a permit to do business in Texas. *Id.* at 144. H. Rouw Company filed the lawsuit in Hidalgo County, Texas, seeking damages for injury to seven shipments of strawberries. *Id.* at 143. None of the shipments originated in Texas, and none passed through any part of Texas.[2] Railway Express Agency moved for dismissal on forum non conveniens grounds, and the trial court granted the motion.[3] The court of appeals reversed, citing the predecessor statutory provisions to articles 8.02 and 2.02(A) of the Texas Business Corporation Act:

The statute ... expressly confers upon foreign corporations doing business under a permit all the rights and privileges

---

1. The parties agree, if the doctrine of forum non conveniens is applicable, the trial court's decision is reviewable under an abuse of discretion standard. Appellants, however, do not contend the trial court abused its discretion; rather, they contend the doctrine is inapplicable.

2. All shipments were made in interstate commerce. "Three of the [railway] cars originated in Arkansas and were destined for New York; three originated in Arkansas, one of which was destined to Minnesota, one to Pennsylvania, and one to Ohio; the seventh originated in Missouri and went to Pennsylvania." *H. Rouw Co.*, 154 S.W.2d at 143–44.

3. Although the doctrine of forum non conveniens was not expressly recognized in Texas at the time of the *Rouw* decision, the court discussed the settled policy of Texas courts to decline jurisdiction over actions that could be tried in another forum with more ease, economy and justice. 154 S.W.2d at 145; *see also* Leroy La Salle, Recent Cases and Statutes, *Conflict of Laws–Jurisdiction–The Doctrine of Forum Non Conveniens*, 20 TEX.L.REV. 609, 610–11 (1942) (discussing development of doctrine in Texas). The United States Supreme Court later determined these same notions formed the basic principles of the doctrine of forum non conveniens in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

of a domestic corporation. In the absence of any other provision this alone would be sufficient to bestow the right to bring, maintain and prosecute to final conclusion this suit. [The statute] expressly confers the power, "To maintain and defend judicial proceedings." *No argument is needed to establish the right of a domestic corporation to maintain a suit such as this against either another domestic corporation or one doing business under a permit.* Any other rule would be intolerable.

. . . .

The District Court, under the law, has jurisdiction of this case. *The statutes ... made the exercise of that jurisdiction obligatory.*

*H. Rouw Co.*, 154 S.W.2d at 145, 146 (emphasis added). The court so held despite its recognition of the potential impact of its decision:

We are not unaware of the practical results that may follow a precedent or law that permits a foreign corporation with a permit to do business to come indiscriminately and at will and bring its suits against another similarly situated regardless of where the cause of action arose. It is an invitation to all to come for reasons of convenience or for advantages, real or imaginary, and is calculated to constitute Texas a "Reno," and make slower the already too slow process of securing the adjudication of legal rights and the settlement of legal controversies between litigants who have no choice, but must resort to Texas courts. We are fearful it may result in many instances of forcing our citizens to wait in the corridors while foreign causes of actions are disposed of. *The situation, if harmful, is one for the Legislature. The court is powerless to correct it.*

*Id.* at 145. (emphasis added).

The *Rouw* court remanded the case for a trial on the merits, and the Texas Supreme Court refused to issue a writ of error. In doing so, the supreme court "determined that the judgment of the Court of Civil Appeals [was] correct and the principles of law declared in the opinion [were] correctly determined." *Continental Oil Co. v. P.P.G. Indus.*, 504 S.W.2d 616, 620 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (following *Rouw*).[4]

Texas appellate courts have continued to apply the *Rouw* holding. In *Continental Oil Co.*, 504 S.W.2d at 620, the Houston Court of Appeals stated:

We consider that the court in *Rouw* held that a foreign corporation having a permit to do business in Texas has a statutory right to sue in the Texas courts another foreign corporation having a permit to do business in Texas, and that such *courts have no discretion* to exercise in the matter of retaining the jurisdiction acquired, and are required to try such a case just as such courts would be required to try a case brought against a Texas corporation by another Texas corporation....

(emphasis added); *see also* Leroy La Salle, Recent Cases and Statutes, *Conflict of Laws–Jurisdiction–The Doctrine of Forum Non Conveniens*, 20 Tex.L.Rev. 609, 611–12 (1942) (discussing pre-*Rouw* holdings construing state statutes as "making the exercise of jurisdiction in certain cases mandatory"). Further, in *Forcum–Dean Co. v. Missouri Pac. R.R.* 341 S.W.2d 464, 466 (Tex.Civ.App.—San Antonio 1960, writ dism'd), this court recognized *Rouw's* holding that foreign corporations with permits to do business in Texas have the "absolute right to bring and maintain suits in the courts of this state."[5]

The parties agree the statutory basis of *Rouw* remains virtually unchanged. In *Rouw*, 154 S.W.2d at 145, the court was construing article 1320 § 2, then applied to foreign corporations by virtue of article 1532 of the Texas Civil Statutes. *Repealed by* Act of May 25, 1961, 57th Leg., R.S., ch.

507–09, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947).

**4.** As discussed in more historical detail below, the supreme court's writ refused action in *Rouw* is precedentially significant.

**5.** *Rouw* was not considered dispositive of the appeal, however, because a foreign partnership, rather than a foreign corporation holding a permit to do business in Texas, was involved. *See id.* at 465, 466.

229 § 1, 1961 Tex.Gen.Laws 458, 458, 451. Article 1532 provided:

> Such corporations, on obtaining such permit, shall have and enjoy all the rights and privileges conferred by the laws of this State on corporations organized under the laws of this State.

Article 1320 § 2 provided:

> Every private corporation as such has power:
> (2) To maintain and defend judicial proceedings.

These provisions were carried forward into the Texas Business Corporation Act (the Act). Article 2.02(A)(2) of the Act states:

> A. [E]ach corporation shall have power:
> (2) To sue and be sued, complain and defend, in its corporate name.

TEX.BUS.CORP.ACT ANN. art. 2.02(A)(2) (Vernon Supp.1993).

Article 8.02(A) of the Act provides:

> A foreign corporation which shall have received a certificate of authority under this Act shall ... enjoy the same, but no greater rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued....

*Id.* art. 8.02(A). As explained in *Continental Oil Co.,*

> While the language found in these sections of the Texas Business [Corporation Act] differs somewhat from that of the statutes superseded, these changes cannot be considered to have weakened the authority of *Rouw.* The court based its decision on the fact that the foreign corporation doing business under a permit had "all the rights and privileges of a domestic corporation." The court also pointed out in *Rouw* that the defendant was also a corporation with a permit "enjoying, in the language of the statute, all the rights and privileges of a domestic corporation."

504 S.W.2d at 620 (citing *Rouw* ).

Appellees claim the argument that the doctrine of forum non conveniens has been statutorily abolished ignores the "no greater rights" language of article 8.02:

Article 8.02 of the Texas Business Corporation Act does provide a properly licensed foreign corporation with the same rights and privileges as a similarly situated domestic corporation. That same provision, however, also dictates that the rights granted such a foreign entity shall be *"no greater"* than the rights granted to domestic corporations. Thus, while a properly licensed foreign corporation has a right to sue and be sued in Texas, such suits are subject to all the rules and exceptions applicable to similarly situated litigation brought by a Texas corporation.

According to appellees, Texas courts have repeatedly entertained forum non conveniens arguments in cases brought by domestic corporations. Appellees rely upon *Acacia Pipeline Corp. v. Champlin Exploration, Inc.,* 769 S.W.2d 719 (Tex. App.—Houston· [1st Dist.] 1989, no writ). In *Acacia,* a Texas corporation sued a Delaware corporation in Harris County, Texas. *Id.* at 719. While true the appellate court found there was personal jurisdiction over the foreign corporate defendant, the court specifically declined to "express any opinion about the application of forum non conveniens to [the] dispute." *Id.* at 720. Thus, we find *Acacia Pipeline Corp.* inconclusive to support appellees' position.

Appellees also rely on *Van Winkle–Hooker Co. v. Rice,* 448 S.W.2d 824, 825 (Tex.Civ.App.—Dallas 1969, no writ), in which a Texas corporation brought suit against a Colorado resident. The factual situation presented here is distinguishable both as to the status of the parties and the question of statutory construction. In *Rice,* the appellee sought to invoke the doctrine of forum non conveniens "solely on the fact that he [was] a resident of Colorado." *Id.* at 828. In this case, appellees are not individuals, but corporations subject to appellants' *Rouw* argument that the doctrine has been statutorily abolished in cases involving foreign corporations with a license to do business in this state. This analysis also applies to appellees' reliance upon *Sarieddine v. Moussa,* 820 S.W.2d 837, 839 (Tex.App.—Dallas 1991, writ de-

nied), in which one individual sued another to recover on a note.

A virtual parallel court interpretation-legislative reaction analogy, *Dow Chem. Co. v. Alfaro*, 786 S.W.2d 674, 678 (Tex. 1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991), provides instruction. In *Alfaro*, relying solely upon *Allen v. Bass*, 47 S.W.2d 426 (Tex.Civ. App.—El Paso 1932, writ ref'd), the Texas Supreme Court concluded the doctrine of forum non conveniens had been statutorily abolished for wrongful death and personal injury actions. *Id.* at 678–79. In discussing the *Allen* decision, issued almost sixty years earlier, the *Alfaro* court noted that the refusal of the application for writ of error manifested the supreme court's "approval of the decision of the Court of Civil Appeals." *Id.* at 679.

▮ Under the analysis employed in *Alfaro*, this court cannot dismiss *Rouw* simply because it is not a recent decision. Moreover, as in *Alfaro*, the fact the supreme court refused to issue a writ of error from the court of civil appeals' decision in *Rouw* has a controlling effect of the statutory forum non conveniens question now before this intermediate appellate court. As noted above, the *Continental* court followed *Rouw* based upon its "writ ref'd" history. 504 S.W.2d at 620. Since June 14, 1927, "a decision by a Court of Civil Appeals in which the Supreme Court refuses a writ of error is as binding as a decision of the Supreme Court itself." *Ohler v. Trinity Portland Cement Co.*, 181 S.W.2d 120, 123 (Tex.Civ.App.—Galveston 1944, no writ). In other words, we must conclude the judgment of the appellate court is correct and that the principles of law declared in the opinion are correctly determined. *Hamilton v. Empire Gas & Fuel Co.*, 134 Tex. 377, 383–84, 110 S.W.2d 561, 565–66 (1937).

Appellees contend *Alfaro* demonstrates that *Rouw* should not be interpreted in favor of abolishing the doctrine of forum non conveniens in this case. Specifically, they argue:

> [T]he Supreme Court conducted an exhaustive discussion of the history of the doctrine in Texas. Nowhere during the course of this treatment did the Court even mention *Rouw* or the rule for which appellants argue *Rouw* stands. The *Alfaro* case thus demonstrates the insignificance of *Rouw* in the forum non conveniens jurisprudence of Texas.

While we agree *Alfaro* does not discuss *Rouw*, we do not agree *Rouw* necessarily must receive "some attention by the *Alfaro* court" to constitute binding precedent. In *Alfaro*, the court noted the general development of the doctrine of forum conveniens in American case law. 786 S.W.2d at 676–77. In discussing its application by Texas courts, however, the court narrowly focused on forum non conveniens related to tort causes of action as superseded by statute. *Mexican Nat'l R.R. v. Jackson*, 89 Tex. 107, 33 S.W. 857 (1896); *Morris v. Missouri Pac. Ry.*, 78 Tex. 17, 14 S.W. 228 (1890); *Southern Pac. Co. v. Graham*, 12 Tex.Civ.App. 565, 34 S.W. 135 (1896, writ ref'd). Further, two of the three cases discussed by the supreme court were reviewed and relied upon by the lower courts in dismissing the action on the ground of forum non conveniens. *Alfaro*, 786 S.W.2d at 678.

Finally, we note the Texas Legislature has recently abrogated the *Alfaro* holding:

## SUBCHAPTER D. FORUM NON CONVENIENS

A. With respect to a claimant who is not a legal resident of the United States, if a court of this state, on written motion of a party finds that in the interest of justice an action to which this section applies would be more properly heard in a forum outside this state, the court may decline to exercise jurisdiction under the doctrine of forum non conveniens and may stay or dismiss the action in whole or in part on any conditions that may be just.

B. With respect to a claimant who is a legal resident of the United States, on written motion of a party, an action to which this section applies may be stayed or dismissed in whole or in part under the doctrine of forum non conveniens if

the party seeking to stay or dismiss the action proves by preponderance of the evidence that:

(1) A forum outside this state is a more appropriate forum that:

(A) offers a remedy for the causes of action brought by a party to which this section applies;

(B) as a result of the submission of the parties or otherwise, can exercise jurisdiction over all parties and claims properly joined in the action by the claimant; and

(C) would provide a place of trial that is fair, reasonable, and convenient to the parties;

(2) Maintenance of the action in the courts of this state would work a substantial injustice to the moving party and the balance of the private interests of all the parties and the public interest of the state predominates in favor of the action being brought in the other forum; and

(3) The stay or dismissal would not, in reasonable probability, result in unreasonable duplication or proliferation of litigation.

Act of February 23, 1993, S.B. 2, § 1, 73rd Leg., 1st R.S. (to be codified at Tex.Civ. Prac. & Rem.Code Ann. § 71.051). Analogously, it is not within the purview of this intermediate appellate court to legislate the demise of *Rouw*.

While we agree with the *Rouw* court of 1941 that the unavailability of forum non conveniens as a tool for Texas judges has a negative potential, abrogation of *Rouw* and *Continental* is within the power of the Texas Supreme Court or the Texas Legislature. The legislative branch has had over fifty years to change *Rouw* and has thus far declined to do so. Once a statute has been interpreted by the Texas Supreme Court, a lower court is entitled to assume the legislature, by failing to amend the statute, indicated its approval of the interpretation. *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169, 170 n. 4 (Tex. 1989). We hold, following *Rouw* and *Continental*, the Texas Legislature has abolished the doctrine of forum non conveniens in cases involving foreign corporations which have permits to conduct business in Texas. Appellants' point is sustained.

■ By cross-point, appellees appeal the denial of their motions to transfer venue. A court's venue determination may "be challenged only on appeal from a trial on the merits." *Morrison ex rel. Morrison v. Williams*, 665 S.W.2d 212, 213 (Tex.App.— San Antonio 1984, orig. proceeding). The order granting or denying a motion to transfer is an interlocutory order from which no appeal may be taken. Tex. R.Civ.P. 87(6). Appellees cross-point is overruled.

■ Appellees also contend this appeal should be dismissed or stayed pending the outcome of litigation initiated by Westinghouse in federal court in New York. As this court has stated: "The pendency of an action in federal courts involving the same parties and the same issues as those involved in a state court proceeding is not a reason for abating the proceedings in the state where the suit in the federal court is in personam." *Green Oaks Apts., Ltd. v. Cannan*, 696 S.W.2d 415, 418 (Tex.App.— San Antonio 1985, no writ). Other Texas appellate courts have applied this general rule in determining that the pendency of an action in federal court is not a reason for abating a Texas lawsuit. *See e.g., Space Master Int'l, Inc. v. Porta–Kamp Mfg. Co.*, 794 S.W.2d 944, 946 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Williamson v. Tucker*, 615 S.W.2d 881, 885 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.); *Byrnes v. University of Houston*, 507 S.W.2d 815, 816–17 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

■ Additionally, it is well established under Texas law that the first court to acquire jurisdiction of a cause of action should retain jurisdiction. *See Cleveland v. Ward*, 116 Tex. 1, 17–18, 285 S.W. 1063, 1070 (1926) ("Since jurisdiction attached upon filing the suit in Johnson County, the rule is elementary that it could not be taken away or arrested by the subsequent proceedings in another court."); *Mayo v. Hall*, 571 S.W.2d 213, 215 (Tex.Civ.App.—

Waco 1978, no writ) ("Jurisdiction having attached on filing of this suit ... it cannot be taken away or arrested by the subsequent proceedings filed in [another state]."); *Mills v. Howard,* 228 S.W.2d 906, 908 (Tex.Civ.App.—Amarillo 1950, no writ) ("[I]t is the custom for the court in which the later action is instituted to stay proceedings therein until the prior action is determined."). Here, the Texas trial court acquired jurisdiction before Westinghouse initiated its declaratory judgment action in the New York federal court. Appellees' request is denied.

The judgment of the trial court granting appellees motion to dismiss under the doctrine of forum non conveniens is reversed and the case is remanded to the trial court for further proceedings.

PEEPLES, Justice, concurring.

The sole issue in this case is whether Texas courts are totally powerless to order a forum non conveniens dismissal—no matter how compelling the facts may be— when out-of-state plaintiffs bring suit in Texas against out-of-state defendants concerning a wholly out-of-state transaction (here, a $115 million New York securities transaction). Of course, non-resident corporations may bring suit in Texas if personal jurisdiction exists; the issue is whether our courts are absolutely forbidden to dismiss those suits on forum non conveniens grounds when everyone admits the facts support that action overwhelmingly.

This panel has reluctantly followed a poorly reasoned but binding precedent and held that one of the three district courts in Webb County, which has not a thread of connection to the litigants or the controversy, must devote its time to an enormous securities lawsuit[1] at the expense of its criminal, family, and general civil cases, which local litigants cannot get tried elsewhere.

The facts implicitly found by the court, and unchallenged by appellant, are:

- Plaintiffs '21' International Holdings and '21' International, Inc. are both New York corporations with their principal place of business and headquarters in New York.
- Neither plaintiff does any business in Webb County. Neither plaintiff has an office, any employees, or any property in Webb County.
- Defendant Westinghouse is a Pennsylvania corporation with its principal place of business in Pennsylvania.
- Knoll North America, the successor to defendant Knoll International, is a Delaware corporation, owned by Westinghouse, with its principal place of business in Pennsylvania.
- Defendant Price Waterhouse is a general partnership formed under New York law with its principal executive offices in New York. Price Waterhouse performed most of its work in connection with the Asset Purchase Agreement in Pennsylvania.
- None of the defendants has an agent or representative in Webb County. Three Westinghouse employees work in Webb County decontaminating an abandoned uranium mine, a project that has nothing to do with the transaction at issue.
- The CEO of '21' International Holdings lives and works in New York City. He had never been to Webb County before the forum non conveniens hearing and did not know where it was.
- The only time prior to this litigation any of plaintiffs' officers or directors had been to Webb County was to pass through customs on their way back from Mexico in an airplane.
- Plaintiffs' General Counsel offices in New York.
- Attorneys from Dallas represented plaintiffs in connection with the Asset Purchase Agreement that is the subject of this litigation. But negotiations always took place in New York or Pennsylvania.

1. Approximately 340,000 documents have been produced; over 700 requests for admissions have been served.

- The Asset Purchase Agreement was executed in New York.
- The Asset Purchase Agreement was not negotiated, executed, or performed in Webb County. None of the documents relevant to the agreement originated in Webb County.
- The Asset Purchase Agreement provides that New York law applies to any disputes arising from the agreement.
- None of the potential witnesses lives in Webb County.

If trial courts have forum non conveniens *power*, the trial court certainly had the discretion to use it in these circumstances.

Nevertheless, on the authority of *H. Rouw Co. v. Railway Exp. Agency*, 154 S.W.2d 143 (Tex.Civ.App.—El Paso 1941, writ ref'd), the court holds that this New York stock exchange dispute must be litigated in Texas because one of the New York litigants has an office here, and the plaintiffs chose to litigate here. I agree that *Rouw* cannot be honestly distinguished and it has the status of a 1941 opinion by the supreme court itself. In a recent forum non conveniens case, the supreme court used a statutory construction argument almost identical to that used in *Rouw*. *See Dow Chem. Co. v. Alfaro*, 786 S.W.2d 674 (Tex.1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). Because this panel takes seriously its duty to follow binding precedent and is unwilling to engage in unabashed sophistry to avoid *Rouw*, we must reverse the forum non conveniens dismissal.[2]

Our corporate laws, sensibly interpreted, do not require this result. They give each domestic corporation the power "to sue and be sued, complain and defend, in its corporate name," and give foreign corporations the same rights that domestic corporations have. TEX.BUS.CORP.ACT.ANN. arts. 2.02(A)(2), 8.02 (Vernon Supp.1993). A fair reading of these provisions suggests that they simply give foreign corporations the right to appear in court like everyone else, but no right to insist on an utterly incon- venient and harassing forum. It is, to say the least, not apparent from the quoted language that the legislature meant to deprive trial courts of all power to order forum non conveniens dismissals when the facts warrant.

This intermediate court is obligated to follow supreme court precedents, but the Texas Supreme Court is not so restricted. I urge the court to reexamine *Rouw* and disapprove it. The legislature did not compel the result in *Rouw*, and if it remains the law in Texas, we will be not only the courthouse for the world but the laughingstock of the legal world as well.

---

2. While the legislature recently corrected the *Alfaro* court's misreading of legislative intent, the new statute does not apply to this transaction.